UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

BENNIE HARDING,                    :

                  Plaintiff,       :    12 Civ. 66 (DAB)(HBP)

    -against-                      :    REPORT AND
                                        RECOMMENDATION
PARAMOUNT PICTURES and             :
VIACOM INC.,
                                   :

                  Defendants.      :
----------------------------------X

          PITMAN, United States Magistrate Judge:

          TO THE HONORABLE DEBORAH A. BATTS, United States

District Judge,

I.   Introduction

          By notice of motion dated August 6, 2012 (Docket Item

16), defendants Paramount Pictures Corporation ("Paramount") and

Viacom Inc. ("Viacom") (collectively, "Defendants") move to

dismiss the complaint (Docket Item 2 ("Compl.")) brought by pro

se Plaintiff Bennie Harding.  Because Defendants submitted a

declaration and documents attached thereto in support of their

motion to dismiss, pursuant to Rule 12(d) of the Federal Rules of

Civil Procedure, I construed the motion as one for summary

judgment and issued an Order on September 26, 2012, advising the

parties that I intended to consider the declaration and documents submitted by Defendants and directing the parties to submit any additional material by October 26, 2012 (Docket Item 28).  The September 26 Order incorporated the text of the notice to <u>pro se</u> litigants required by Local Civil Rule 56.2 and the full text of Rule 56 of the Federal Rules of Civil Procedure.  Plaintiff submitted additional documents on October 22, 2012 (Docket Item 30).

For the reasons set forth below, I respectfully recommend that summary judgment be granted in favor of Defendants and that this action be dismissed in its entirety.

II.  <u>Facts</u>

The relevant facts are set forth in the declaration of Jennifer Kolbe, the Vice President of Publishing at Rockstar Games, Inc.,[1] dated August 3, 2012 ("Kolbe Decl.") (Docket Item 19).  Plaintiff has not controverted any of the material factual statements in Ms. Kolbe's declaration.

In 1979, Paramount produced a film entitled "The Warriors" ("Warriors Film") (Kolbe Decl. ¶ 3).  Plaintiff

---

[1]Rockstar Games, Inc. developed and produced the video game, The Warriors, that is the subject of this action (Kolbe Decl. ¶ 5).

appeared as an unnamed "extra" in the Warriors Film, portraying a
member of the Gramercy Riffs street gang (Kolbe Decl. ¶ 3).  In
connection with his appearance in the Warriors Film, Plaintiff
and Paramount entered into two day-player agreements on August 11
and August 23, 1978 (the "Agreements") (Kolbe Decl. ¶ 4).  The
Agreements obligated Paramount to pay Plaintiff $225.00 per day
for the two days that he spent filming his appearance in the
Warriors Film (Kolbe Decl. ¶ 4).  Paramount fulfilled its
obligations under the Agreements by tendering two payments of
$225.00 to Harding (Kolbe Decl. ¶ 4; see also Compl. at 8 ¶ 26).

The Agreements also incorporated four riders (the
"Riders"), which Plaintiff has annexed to his opposition (Docket
Item 26 at 23-24).[2]  Rider A provided, in pertinent part, that
Paramount "agrees to grant Player [Plaintiff] credit as follow:
(i) On the screen[:]  NO OBLIGATION [and] (ii) In paid
advertising[:]  NO OBLIGATION (Docket Item 26 at 23 (emphasis in
original)).  Rider B provided that Paramount was not obligated to
reimburse Plaintiff for living expenses.  Rider C provided, in
pertinent part, that "Producer [Paramount] shall have the
exclusive right to make one or more promotional films of 12

---

[2]In response to Defendants' motion to dismiss, Plaintiff
submitted a "Notice of Motion to Dismiss on Defendants," which I
shall construe as Plaintiff's opposition (Docket Item 26).

minutes or less and to utilize the results and proceeds of Player's [Plaintiff] services" and that "[p]rovided player appears [in the promotional film], Producer shall pay to Player the applicable day player minimum scale sum within 10 days after the first use of each such professional film on television or before a paying audience" (Docket Item 26 at 24).  Plaintiff does not claim that he appeared in any of the promotional films associated with the Warriors Film.  Rider D provided that Plaintiff acknowledged that he had read the script and agreed to perform in accordance with that script (Docket Item 26 at 24).

Paramount is a wholly-owned subsidiary of Viacom (Docket Item 15, Defs.' Rule 7.1 Statement).  Viacom is the owner of the rights in the Warriors Film (Kolbe Decl. ¶ 5).  In 2005, Viacom granted a license to Take-Two Interactive Software, Inc. and Rockstar Games, Inc. (collectively, "Take-Two") to develop and publish a video game based on the Warriors Film (the "Warriors Video Game") (Kolbe Decl. ¶ 5).  The Warriors Video Game went on sale on October 17, 2005 (Kolbe Decl. ¶ 5).  According to Plaintiff, as of 2006, the Warriors Video Game has generated approximately $37 million in sales (Compl. at 10).

In the Warriors Video Game, Take-Two replicated some scenes and the likenesses of certain lead characters from the Warriors Film (Kolbe Decl. ¶ 6).  Take-Two did not, however,

4

recreate the likenesses of secondary characters from the Warriors
Film, including the "extra" character that Plaintiff portrayed
(Kolbe Decl. ¶ 8).   Rather, the physical appearances of these
extra characters in the Warriors Video Game were the original
creations of Take-Two's art staff (Kolbe Decl. ¶ 9).   In other
words, the secondary characters in the Warriors Video Game were
not based on any of the actors appearing in the Warriors Film
(Kolbe Decl. ¶ 9).   Plaintiff, however, maintains that the
Warriors Video Game included a character based on his likeness
from the Warriors Film (the "Video Game Character") and did so
without his authorization or compensation to him (Compl. at 16-
21).   Reproduced below are images Plaintiff submitted depicting
his appearance in the Warriors Film and the Video Game Character
that Plaintiff alleges is based on him (Kolbe Decl. ¶¶ 13, 15).





Plaintiff in the                Video Game Character
Warriors Film

On March 27, 2009, Plaintiff, then represented by
counsel, commenced an action with a summons and notice against

Take-Two and Paramount in New York State Supreme Court, Index No. 2009-104314, alleging that Take-Two and Paramount had violated his right to privacy under Sections 50 and 51 of the New York Civil Rights Law by including his likeness in the Warriors Video Game (the "New York State Action") (Kolbe Decl. ¶ 17, Ex. 7).  On or about May 18, 2009, Plaintiff, Take-Two and Paramount entered into a stipulation discontinuing the New York State Action (Kolbe Decl. ¶ 19, Ex. 8).  The stipulation provided, in pertinent part, that the New York State Action was "discontinued with prejudice and on the merits" (Kolbe Decl., Ex. 8).

     On or about November 12, 2009, Plaintiff, proceeding pro se, commenced an action against Take-Two and Volunteer Lawyers for the Arts[3] in the District of Massachusetts, Docket No. 09 Civ. 11980 (the "Massachusetts Federal Action") (Kolbe Decl. ¶ 20, Ex. 9).  Neither party has provided the complaint Plaintiff filed in the Massachusetts Federal Action.  Ms. Kolbe's declaration, however, states that the Massachusetts Federal Action was based on the same facts underlying the New York State Action and that the court interpreted Plaintiff's pro se complaint as asserting a claim for violation of Massachusetts

---

     [3]It appears that Harding had previously contacted Volunteer Lawyers for the Arts to assist him with his lawsuit, and that the organization turned Plaintiff down (Compl. at 18).

privacy law (Kolbe Decl. ¶¶ 20-21).  On May 20, 2010, the Massa-chusetts court granted Take-Two's motion to dismiss the complaint (Kolbe Decl., Ex. 9 at 4).  Plaintiff then submitted an amended complaint that named Aaron Silverstein[4] as a defendant (Kolbe Decl., Ex. 9 at 5).  The court dismissed the amended complaint without prejudice on January 1, 2011 pursuant to Rule 4(m) of the Federal Rules of Civil Procedure (Kolbe Decl. Ex. 9 at 5).

Plaintiff commenced this action against Paramount and Viacom on January 4, 2012 (Docket Item 2).  Construing his complaint liberally, Plaintiff asserts two claims both based on the purported inclusion of his likeness in the Warriors Video Game:  (1) breach of contract arising from Paramount's obliga-tions under the Agreements and the Riders and (2) violation of New York Civil Rights Law Sections 50 and 51.  The facts Plain-tiff has presented in support of these claims are the same as those underlying the New York State Action and the Massachusetts Federal Action, i.e., his involvement in the Warriors Film and the purported use of his likeness as a model for the Video Game Character.  Indeed, Plaintiff has incorporated part of the pleadings submitted in the New York State Action and the Massa-

---

[4]Mr. Silverstein was a lawyer that Plaintiff had contacted to handle his case on a pro bono basis (Docket Item 2 at 17).

chusetts Federal Action in his complaint here (see generally Compl.).

Defendants move to dismiss Plaintiff's complaint on four grounds:  (1) for lack of subject matter jurisdiction because Plaintiff has failed to allege a sufficient amount in controversy to satisfy diversity jurisdiction; (2) the action is barred by the doctrine of res judicata; (3) failure to state a claim for relief; and (4) statute of limitations (Docket Item 17).

With his opposition, Plaintiff included stills from the Warriors Film and the Warriors Video Game, paystubs and checks for residuals for the Warriors Film that Plaintiff received from the Screen Actors Guild, and a letter from and film stills featuring Eddie Earl Hatch who appeared alongside Plaintiff in the Warriors Film (Docket Item 26).  Plaintiff, however, did not address Defendants' legal arguments nor did he contest that the New York State Action and the Massachusetts Federal Action are premised on the same facts as this action.  In response to my September 26 Order, Plaintiff submitted additional material including a printout from the Internet Movie Database website for the Warriors Film listing him as an actor appearing in it, a DVD containing scenes from the Warriors Film and the Warriors Video Game and an additional statement from Mr. Hatch regarding Plaintiff's involvement in the Warriors Film (Docket Item 30).

III.  <u>Analysis</u>

A.  <u>Summary Judgment Standard</u>

The standards applicable to a motion for summary judgment are well-settled and require only brief review.

> Summary judgment shall be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  This form of relief is appropriate when, after discovery, the party -- here plaintiff -- against whom summary judgment is sought, has not shown that evidence of an essential element of [his] case -- one on which [he] has the burden of proof -- exists.  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  This form of remedy is inappropriate when the issue to be re-solved is both genuine and related to a disputed mate-rial fact.  An alleged factual dispute regarding imma-terial or minor facts between the parties will not defeat an otherwise properly supported motion for summary judgment.  <u>See</u> <u>Howard v. Gleason Corp.</u>, 901 F.2d 1154, 1159 (2d Cir. 1990).  Moreover, the exis-tence of a mere scintilla of evidence in support of nonmovant's position is insufficient to defeat the motion; there must be evidence on which a jury could reasonably find for the nonmovant.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986).
>
> If the movant demonstrates an absence of a genuine issue of material fact, a limited burden of production shifts to the nonmovant, who must "demonstrate more than some metaphysical doubt as to the material facts," and come forward with "specific facts showing that there is a genuine issue for trial."  <u>Aslanidis v. United States Lines, Inc.</u>, 7 F.3d 1067, 1072 (2d Cir. 1993).  If the nonmovant fails to meet this burden, summary judgment will be granted against it.  <u>Gallo v. Prudential Residential Servs.</u>, 22 F.3d 1219, 1224 (2d Cir. 1994).

9

Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004); accord Jeffreys v. City of New York, 426 F.3d 549, 553-54 (2d Cir. 2005); Gallo v. Prudential Residential Servs., Ltd., 22 F.3d 1219, 1223-24 (2d Cir. 1994).

"The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists . . . . In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant . . . . Stated more succinctly, '[t]he evidence of the non-movant is to be believed.'" Lucente v. Int'l Bus. Machs. Corp., 310 F.3d 243, 253-54 (2d Cir. 2002) (citations omitted).  See also Jeffreys v. City of New York, supra, 426 F.3d at 553 ("'Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.'"), quoting Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996); accord Make the Road by Walking, Inc. v. Turner, 378 F.3d 133, 142 (2d Cir. 2004); Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).

B.  Subject Matter Jurisdiction

As a threshold matter, I shall consider whether subject-matter jurisdiction exists here.  See Arrowsmith v.

10

United Press Int'l, 320 F.2d 219, 221 (2d Cir. 1963) ("Not only does logic compel initial consideration of the issue of jurisdiction . . . -- a court without such jurisdiction lacks power to dismiss a complaint for failure to state a claim -- but the functional difference that flows from the ground selected for dismissal likewise compels considering jurisdiction . . . questions first.").  Defendants argue that Plaintiff has failed to satisfy the amount in controversy requirement for diversity jurisdiction because he has only pled that he "will let the courts decide what the damages are" (Compl. at 10).

        Under 28 U.S.C. § 1332, a court has subject matter jurisdiction over an action "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states."  28 U.S.C. § 1332(a)(1).  This statute requires complete diversity, which means that no plaintiff may be the citizen of the same state of any defendant.  St. Paul Fire & Marine Ins. Co. v. Universal Builders Supply, 409 F.3d 73, 80 (2d Cir. 2005).  There is no dispute that Plaintiff and Defendants are completely diverse from one another.  Plaintiff is a citizen of Massachusetts (Compl. at 5 ¶ 1), and Defendants are citizens of Delaware and New York (Compl. at 5 ¶¶ 2-3).

11

Defendants argue that Plaintiff has not satisfied the amount in controversy requirement because he has not pled a specific amount for damages.  Given Plaintiff's pro se status, I am obligated to construe his pleadings liberally, and I conclude that the complaint adequately alleges that the amount in controversy exceeds $75,000.  Plaintiff has alleged that the Warriors Video Game has produced $37 million dollar in sales.  This allegation, read leniently, suggests that Plaintiff is claiming damages for some percentage of this total that is in excess of $75,000.  The fact that such a sum may not, in fact, be recovered has no bearing on my determination that Plaintiff has met the jurisdictional threshold.  See Zacharia v. Harbor Island Spa, Inc., 684 F.2d 199, 202 (2d Cir. 1982) ("The jurisdictional determination is to be made on the basis of the plaintiff's allegation, not on a decision on the merits" and "even where those allegations leave grave doubt about the likelihood of recovery of the requisite amount, dismissal is not warranted.").  Thus, given Plaintiff's pro se status, I conclude that he has adequately alleged the amount in controversy and there is diversity jurisdiction over this action.

C.  Res Judicata

Defendants next argue that Plaintiff's claims are barred by res judicata in light of the New York State Action and the Massachusetts Federal Action.

"[R]es judicata [] bars 'repetitious suits involving the same cause of action' once 'a court of competent jurisdiction has entered a final judgment on the merits.'" United States v. Tohono O'Odham Nation, 131 S. Ct. 1723, 1730 (2012); see also Falardo v. New York City Police Dep't, 566 F. Supp. 2d 283, 285 (S.D.N.Y. 2008) (Marrero, D.J.) ("Res judicata bars 'subsequent litigation of any ground of recovery that was available in [a] prior action, whether or not it was actually litigated or deter-mined.'"), quoting Balderman v. United States Veterans Admin., 870 F.2d 57, 62 (2d Cir. 1989)).

With respect to the New York State Action, "a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984); see also Cloverleaf Realty of New York, Inc. v. Town of Wawayanda, 572 F.3d 93, 95 (2d Cir. 2009); Jenkins v. City of New York, 478 F.3d 76, 85 (2d Cir. 2007). With respect to the Massachusetts Federal Action, "[w]hether or not a prior federal court judgment has preclusive effect in a subsequent action is a question of federal common

13

law."  NML Capital, Ltd. v. Banco Central de la Republica Argen-
tina, 652 F.3d 172, 184 (2d Cir. 2011), citing Taylor v.
Sturgell, 553 U.S. 880, 891 (2008).  "There is, however, 'no
discernible difference between federal and New York law concern-
ing res judicata. . . ."  Romag Fasteners, Inc. v. Bauer, 11 Civ.
3181 (PAC), 2011 WL 5513380 at *5 (S.D.N.Y. Nov. 9, 2011) (Crot-
ty, D.J.), quoting Algonquin Power Income Fund v. Christine Falls
of New York, 362 F. App'x 151, 154 (2d Cir. 2010).

    "'Under New York's transactional approach to [res
judicata], once a claim is brought to a final conclusion, all
other claims arising out of the same transaction or series of
transactions are barred, even if based upon different theories or
if seeking a different remedy.'"  Giannone v. York Tape & Label,
Inc., 548 F.3d 191, 194 (2d Cir. 2008) (alteration in original),
quoting In re Derek Josey, 9 N.Y.3d 386, 389-90, 880 N.E.2d 18,
20, 849 N.Y.S.2d 497, 499 (2007).  "To prove the affirmative
defense a party must show that (1) the previous action involved
an adjudication on the merits; (2) the previous action involved
the plaintiffs or those in privity with them; [and] (3) the
claims asserted in the subsequent action were, or could have
been, raised in the prior action."  Monahan v. New York City
Dep't of Corrections, 214 F.3d 275, 285 (2d Cir. 2000); accord
Bank of New York v. First Millennium, Inc., 607 F.3d 905, 918 (2d

14

Cir. 2010); Pike v. Freeman, 266 F.3d 78, 91 (2d Cir. 2001).  All of the pre-requisites for res judicata have been met here.

First, the prior New York State Action was adjudicated on the merits.  "A judgment on the merits for purposes of res judicata is not necessarily a judgment based upon a trial of contested facts; it may, for example, be a default judgment, a judgment on stipulation or agreement, or a summary judgment."  Gianatasio v. D'Agostino, 862 F. Supp. 2d 343, 349 (S.D.N.Y. 2012) (Sweet, D.J.) (internal citation omitted).  Under New York law, a stipulation of discontinuance serves as a final adjudication on the merits.  See NBN Broad., Inc. v. Sheridan Broad. Networks, Inc., 105 F.3d 72, 78 (2d Cir. 1997) (under New York law, "a discontinuance with prejudice is deemed a final adjudication on the merits for res judicata purposes on the claims asserted or which could have been asserted in the suit"); Allianz Ins. Co. v. Lerner, 296 F. Supp. 2d 417, 421 (E.D.N.Y. 2003) ("A stipulation of discontinuance with prejudice has the same effect as a final judgment on the merits for res judicata purposes" citing Schwartzreich v. E.P.C. Carting Co., 246 A.D.2d 439, 441, 668 N.Y.S.2d 370, 372 (1st Dep't 1998)); Cora v. Ranjan, 98 A.D.3d 598, 599, 949 N.Y.S.2d 503, 504 (2d Dep't 2012) ("A stipulation of discontinuance with prejudice without reservation of right or limitation of the claims disposed of is entitled to

preclusive effect under the doctrine of <u>res</u> <u>judicata</u>." (internal quotations omitted)); <u>Fifty CPW Tenants Corp. v. Epstein</u>, 16 A.D.3d 292, 294, 792 N.Y.S.2d 58, 60 (1st Dep't 2005) (stipulation of discontinuance with prejudice is a judgment on the merits for the purposes of <u>res</u> <u>judicata</u>).  Thus, with respect to the New York State Action, the stipulation of discontinuance entered by and among Plaintiff, Take Two and Paramount represents a final adjudication on the merits.  In the Massachusetts Federal Action, Plaintiffs's claims against Take Two were dismissed on unspecified grounds.  However, regardless of whether the Massachusetts Federal Action resulted in a final adjudication on the merits, the doctrine of <u>res</u> <u>judicata</u> is still applicable to this action by virtue of the earlier New York State Action alone.  Because the New York State Action resulted in an adjudication on the merits, the first element of <u>res</u> <u>judicata</u> is satisfied.

Second, Defendants have shown that they are in privity with the defendants in the New York State Action and Massachusetts Federal Action.  As applied to <u>res</u> <u>judicata</u>, "[t]he concept [of privity] requires a flexible analysis of the facts and circumstances of the actual relationship between the party and nonparty in the prior litigation . . . ."  <u>Evergreen Bank N.A. v. Dashnaw</u>, 246 A.D.2d 314, 316, 668 N.Y.S.2d 256, 258 (3d Dep't 1998); <u>see</u> <u>also</u> <u>Monahan v. New York City Dep't of Corrections</u>,

supra, 214 F.3d at 285 ("It is well settled in this circuit that literal privity is not a requirement for res judicata to apply."). "In its modern form, the principle of privity bars relitigation of the same cause of action against a new defendant known by a plaintiff at the time of the first suit where the new defendant has a sufficiently close relationship to the original defendant to justify preclusion." Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A., 56 F.3d 359, 367-68 (2d Cir. 1995); see also Faiveley Transp. USA, Inc. v. Wabtec Corp., 758 F. Supp. 2d 211, 217 (S.D.N.Y. 2010) (Rakoff, D.J.) ("The general rule of privity for purposes of res judicata 'is that one whose interests were adequately represented by another vested with the authority of representation is bound by the judgment, although not formally a party to the [action].'" (internal citation omitted)); accord Pope v. Enzo Biochem, Inc., 432 F. App'x 7, 9-10 (2d Cir. 2011). Accordingly, parties encompassed under the term privity include "'those who are successors to a property interest, those who control an action although not formal parties to it, those whose interests are represented by a party to the action, and possibly coparties to a prior action.'" Chase Manhattan Bank, N.A. v. Celotex Corp., 56 F.3d 343, 346 (2d Cir. 1995), quoting Watts v. Swiss Bank Corp., 27 N.Y.2d 270, 277, 265 N.E.2d 739, 743, 317 N.Y.S.2d 315, 320 (1970); see also Hughes v.

17

Lillian Goldman Family, LLC, 153 F. Supp. 2d 435, 449 (S.D.N.Y. 2001) ("In general, to establish privity between parties, the connection between the parties must be such that the interests of the party that was not present in the prior proceedings can said to have been represented in the prior proceeding.").

Here, Paramount was named in the New York State Action, and there is no dispute that it is the same party named in this action.  Although Viacom was not named in either of Plaintiff's two earlier actions, it is in privity with the defendants that were named.  There is privity, for the purposes of res judicata, between Viacom and Paramount given their parent-subsidiary relationship.  See, e.g., Farber v. Goldman Sachs Grp., Inc., 10 Civ. 873 (BSJ)(GWG), 2011 WL 666396 at *5 (S.D.N.Y. Feb. 16, 2011) (Jones, D.J.) ("[A]lthough Goldman Sachs Group was not a party in the FINRA arbitration, because it is the parent corpora-tion of its wholly-owned subsidiary, Goldman Sachs & Co., the privity requirement is satisfied.").  There are no facts that suggest that Paramount did not adequately represent the interests of its parent corporation.  Moreover, even if there were not privity between Viacom and Paramount, there is privity between Viacom and Take-Two.  Viacom licensed the rights to the Warriors Film to Take-Two.  Because Plaintiff's claims against Take-Two and Viacom are based on the same alleged wrongdoing, i.e., the

alleged use of Plaintiff's likeness in the Warriors Video Game, both Take-Two and Viacom have the same interests and incentives in defending against this claim.  See Melwani v. Jain, 02 Civ. 1224 (DF), 2004 WL 1900356 at *3 (S.D.N.Y. Aug. 24, 2004) (Freeman, M.J.) (parties were in privity for the purposes of res judicata "given the identity of interests and incentives between the two companies in defending against the same claims based on the same alleged wrongdoing").  Further, in light of the fact that Take-Two secured dismissals in the New York State Action and the Massachusetts Federal Action, there is nothing that suggests that Take-Two did not adequately represent Viacom's interests in those actions.  Accordingly, the New York State Action and the Massachusetts Federal Action and this action involved the same parties or their privies.

Finally, Plaintiff's claims here arise out of the same transaction underlying the New York State Action and the Massachusetts Federal Action and were or should have been raised in those earlier actions.  Under New York's transactional approach, "[i]n determining what constitutes the same transaction, the court should look to:  how the facts are related in time, space, origin or motivation; whether they form a convenient trial unit; and whether treating them as a unit conforms to the parties' expectations."  Yeiser v. GMAC Mortg. Corp., 535 F. Supp. 2d 413,

422 (S.D.N.Y. 2008) (Conner, D.J.), citing Marinelli Assocs. v. Helmsley-Noyes Co., 265 A.D.2d 1, 5-6, 705 N.Y.S.2d 571, 575-76 (1st Dep't 2000).  A later claim will be barred if it arises out of the same facts as the earlier claim, even if the later claim seeks recovery under a different legal theory.  Jacobson v. Fireman's Fund Ins. Co., 111 F.3d 261, 265 (2d Cir. 1997); see also Waldman v. Village of Kiryas Joel, 207 F.3d 105, 110 (2d Cir. 2000) ("[A] plaintiff cannot avoid the effects of res judicata by 'splitting' his claims into various suits, based on different theories. . . ."); Ningbo Prods. Import & Export Co. v. Eliau, 11 Civ. 650 (PKC), 2011 WL 5142756 at *9 (S.D.N.Y. Oct. 31, 2011) (Castel, D.J.) ("Claims premised upon '[n]ew legal theories do not amount to a new cause of action so as to defeat the application of' res judicata," quoting In re Teltronics Servs., Inc., 762 F.2d 185, 193 (2d Cir. 1985)); Bd. of Managers of 195 Hudson St. Condominium v. Jeffrey M. Brown Assocs., Inc., 652 F. Supp. 2d 463, 472 (S.D.N.Y. 2009) (Leisure, D.J.) ("The transactional approach prevents piecemeal litigation, so that a decision is dispositive not only on the theory of recovery alleged, but also of all other theories that might have been cited in support against the same wrong.").  "Res judicata thus 'operates to preclude the renewal of issues actually litigated and resolved in a prior proceeding as well as claims for differ-

ent relief which arise out of the same factual grouping or transaction and which should have or could have been resolved in the prior proceeding.'" <u>Douglas Elliman, LLC v. Bergere</u>, 98 A.D.3d 642, 643, 949 N.Y.S.2d 766, 767 (2d Dep't 2012) (internal quotations omitted).

Plaintiff's claims here were either raised or could have been raised in the earlier actions because they are based on the same facts giving rise to both of the previous actions -- namely Plaintiff's involvement in the Warriors Film and the later alleged use of his likeness in the Warriors Video Game.  Plaintiff does not appear to dispute this.  Indeed, the documents Plaintiff has submitted in opposition to Defendants' motion -- stills from the Warriors Film and the Warriors Video Game -- only underscore that this action is another attempt to relitigate this same subject matter.  The fact that Plaintiff has submitted portions of the pleadings he used in the New York State Action and the Massachusetts Federal Action further confirms that his claims here are barred.  More specifically, Plaintiff raised his invasion of privacy claim in both the New York State Action and the Massachusetts Federal Action, and, therefore, it is barred here.  Plaintiff's breach of contract claim is based on the same facts underlying the earlier actions and, accordingly, should have been raised then.  Though Plaintiff may disagree with the

21

outcome of the earlier actions, he cannot overcome their preclusive effect by pursuing a new theory of recovery or by filing a new suit in a different forum.

Accordingly, Plaintiff's claims here are barred by res judicata and I respectfully recommend that Defendants' motion for summary judgment be granted.

### D.   Merits of Plaintiff's Claims

Even if this action was not barred by the doctrine of res judicata, I conclude that summary judgment is still warranted because there are no genuine issues of material fact with respect to Plaintiff's breach of contract and privacy claims.

#### 1.   Breach of Contract

Under New York law, the elements of breach of contract are (1) the existence an agreement; (2) adequate performance of the contract by the plaintiff; (3) breach of the agreement by the defendant; and (4) damages.  Fischer & Mandell, LLP v. Citibank, N.A., 632 F.3d 793, 799 (2d Cir. 2011);  Diesel Props S.R.L. v. Greystone Bus. Credit II LLC, 631 F.3d 42, 52 (2d Cir. 2011); Eternity Global Master Fund Ltd. v. Morgan Guaranty Trust Co. of N.Y., 375 F.3d 168, 177 (2d Cir. 2004).

22

"The threshold question in a dispute over the meaning of a contract is whether the contract terms are ambiguous." Revson v. Cinque & Cinque, P.C., 221 F.3d 59, 66 (2d Cir. 2000). The determination of whether a contract is ambiguous is a matter of law for the court to decide. JA Apparel Corp. v. Abboud, 568 F.3d 390, 396-97 (2d Cir. 2009). "Summary judgment is appropriate if the terms of the contract are unambiguous." Fischer & Mandell, LLP v. Citibank, N.A., supra, 632 F.3d at 799. "Contract language is not ambiguous if it has 'a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion.'" JA Apparel Corp. v. Abboud, supra, 568 F.3d at 396. In contrast, "[a]mbiguous language is language that is 'capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'" Revson v. Cinque & Cinque, P.C., supra, 221 F.3d at 66.

Summary judgment is appropriate here. Neither the Agreements nor the Riders imposed any obligation on Paramount or Viacom beyond the obligation to pay Plaintiff $225 for each day he spent filming. The parties agree that Paramount paid Plain-

tiff these fees (compare Kolbe Decl. ¶ 4 with Compl. at 8 ¶ 27

and Docket No. 26 at 2).  Nonetheless, Plaintiff claims that the

Riders "create[d] rights and interests that survive mere perfor-

mance" and that Defendants breached the Agreements and the Riders

by permitting his likeness from the Warriors Film to be used in

the Warriors Video Game without compensation to him (Compl. at 8

¶¶ 27-42).  The only arguably applicable Riders -- Rider A and

Rider C -- are unambiguous and do not create the rights Plaintiff

claims they do.  Rider A merely provides that Paramount was under

no obligation to grant Plaintiff credit in the Warriors Film.  It

did not obligate Paramount to compensate Plaintiff for the use of

his likeness outside of the Warriors Film.[5]  Rider C addresses

Paramount's rights to make promotional films for the Warriors

Film and its obligation to compensate Plaintiff in the event that

Plaintiff appeared in those films.  Plaintiff does not claim that

---

[5]It appears that Plaintiff signed a release in connection
with his appearance in the Warriors Film.  In a letter dated July
18, 2007, Take-Two's counsel wrote to Plaintiff's then-counsel
that:

> As your client should have informed you, he signed a release
> at the time he agreed to perform in the movie.  That release
> authorizes the producers of the movie to exploit and license
> the use of his name, photograph, likeness, image and
> character in connection with any merchandising based on the
> film.

(Kolbe Decl. Ex. 6).

he was in any such promotional films, and thus, this rider is inapplicable to Plaintiff's breach of contract claim.  In light of Paramount's complete fulfillment of its unambiguous obligations to Plaintiff under the Agreements and the Riders, summary judgment is warranted.

Morever, even assuming that the Agreements obligated Defendants to pay Plaintiff for the use of his likeness outside of the Warriors Film, there simply would be no breach.  No reasonable juror could conclude that there is a resemblance between the Video Game Character and Plaintiff as he appeared in the Warriors Film.  A side-by-side comparison of the Video Game Character and Plaintiff's appearance in the Warriors Film reveals multiple articulable differences.  Plaintiff's face shape is square, while the Video Game Character's face shape is markedly oval.  Plaintiff's nose is distinctly broader and shorter than the long and narrow nose of the Video Game Character.  In addition, the Video Game Character's hair is more closely cropped around the sides of his head than is the hair of Plaintiff.  These physical differences definitively demonstrate that the Video Game Character was not based on Plaintiff's physical appearance in the Warriors Film.  Accordingly, there are no genuine issues of material fact with respect to Plaintiff's contract claim and Defendants are entitled to summary judgment.

25

2.   <u>Privacy Claim</u>

Plaintiff claims that Defendants violated his right to privacy under Sections 50 and 51 of the New York Civil Rights Law by permitting his likeness from the Warriors Film to be used in the Warriors Video Game.  Section 50 provides that "A person, firm or corporation that uses for advertising purposes, or for the purposes of trade, the name, portrait or picture of any living person without having first obtained the written consent of such person . . . is guilty of a misdemeanor."  N.Y. Civ. Rights Law § 50.  "Section 51 creates a private right of action for violations of Section 50," <u>Naked Cowboy v. CBS</u>, 844 F. Supp. 2d 510, 519 (S.D.N.Y. 2012) (Jones, D.J.), and provides, in pertinent part, that:

> Any person whose name, portrait, picture or voice is used within this state for advertising purposes or for the purposes of trade without the written consent first obtained . . . may maintain an equitable action . . . against the person, firm or corporation so using his name, portrait, picture or voice, to prevent or re-strain the use thereof; and may also sue and recover damages for any injuries sustained by reason of such use.

N.Y. Civ. Rights Law § 51.  "Sections 50 and 51 are 'to be narrowly construed and "strictly limited to nonconsensual commer-cial appropriations of the name, portrait or picture of a living person."'"  <u>Walter v. NBC Television Network, Inc.</u>, 27 A.D.3d

26

1069, 1070, 811 N.Y.S.2d 521, 523 (4th Dep't 2006) (internal citations omitted); accord Groden v. Random House, Inc., 61 F.3d 1045, 1049 (2d Cir. 1995). "To maintain a civil action under Section 51, a plaintiff must show that the defendant (1) used his name, portrait, picture, or voice, (2) for advertising or trade purposes, (3) without his written consent." Burck v. Mars, Inc., 571 F. Supp. 2d 446, 451 (S.D.N.Y. 2008) (Chin, then D.J., now Cir. J.). "Any recognizable likeness, not just an actual photo-graph, may qualify as a 'portrait or picture.'" Allen v. Nat'l Video, Inc., 610 F. Supp. 612, 622 (S.D.N.Y. 1985) (Motley, D.J.).

Defendants are entitled to summary judgment on the privacy claim. Plaintiff has not shown that there are any genuine issues of material fact concerning whether his likeness was used in the Warriors Video Game. As explained above, there is simply no resemblance between the Video Game Character and Plaintiff as he appeared in the Warriors Film. This absence of similarity is fatal to Plaintiff's privacy claim. Moreover, Plaintiff has no evidence controverting Defendants' evidence that the secondary characters in the Warriors Video Game, including Plaintiff's character, were the original creations of Take-Two's art staff and were not based on the physical appearances of any of the actors depicting them in the Warriors Film. Given the

27

clear differences between the physical appearances of the Video Game Character and Plaintiff in the Warriors Film, there are no genuine issues of material fact.  Defendants are entitled to summary judgment and Plaintiff's privacy claim should be dismissed.

Although Defendants argue, in the alternative, that Plaintiff's contract and privacy claims should be dismissed as time-barred, I decline to address this argument in light of my recommendation for dismissal on <u>res</u> <u>judicata</u> grounds and on the merits.

## IV.  <u>Conclusion</u>

For the reasons stated above, I respectfully recommend that Defendants' motion for summary judgment be granted in whole and that this action be dismissed.

## V.  <u>Objections</u>

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections.  <u>See</u> <u>also</u> Fed.R.Civ.P. 6(a).  Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable

Deborah A. Batts, United States District Judge, 500 Pearl Street,
Room 2510, New York, New York 10007 and to the Chambers of the
undersigned, 500 Pearl Street, Room 750, New York, New York
10007.  Any requests for an extension of time for filing objec-
tions must be directed to Judge Batts.  FAILURE TO OBJECT WITHIN
FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL**
PRECLUDE APPELLATE REVIEW.  Thomas v. Arn, 474 U.S. 140, 155
(1985); United States v. Male Juvenile, 121 F.3d 34, 38 (2d Cir.
1997); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054
(2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.
1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir.
1988); McCarthy v. Manson, 714 F.2d 234, 237-238 (2d Cir. 1983).

Dated:  New York, New York
        January 16, 2013

                              Respectfully submitted,


                              _____
                              HENRY PITMAN
                              United States Magistrate Judge

29

Copies mailed to:

Bennie Harding
272 Central St.
Rockland, Massachusetts   02370

Peter Ostrovski, Esq.
Sean-Francis Kane, Esq.
Pillsbury Winthrop Shaw Pittman LLP
1540 Broadway
New York, New York   10036